1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

OLYMPIC FOREST COALITION,

Case No. C16-5068-RSL

10

Plaintiff,

11

v.

ORDER GRANTING
MOTION TO LIFT STAY

12

COAST SEAFOODS COMPANY,

13

Defendant.

14

15       THIS MATTER is before the Court on plaintiff's "Motion to Lift Stay." Dkt. # 107.

16  Having reviewed the memoranda submitted by the parties and the remainder of the record, the

17  Court finds as follows:[1]

18                              **I. BACKGROUND**

19       On January 27, 2016, plaintiff Olympic Forest Coalition filed a Clean Water Act

20  ("CWA") citizen suit against defendant Coast Seafoods Company for effluent discharges into

21  Washington's Quilcene Bay. Dkt. # 1 at 1. Defendant owns and operates an oyster hatchery in

22  Quilcene. Dkt. # 108 at 1-2. In the first phase of this case, the Ninth Circuit affirmed this Court's

23  order denying defendant's motion to dismiss, stating that the CWA required defendant to obtain

24  a National Pollutant Discharge Elimination System ("NPDES") permit. Dkt. # 21; Dkt. # 41 at

25  3. Defendant applied for the NPDES permit from the Washington State Department of Ecology

26  on November 29, 2018. Dkt. # 66 at 43 (Exhibit M).

27

28       [1] Plaintiff has requested oral argument. Dkt. # 107. The Court concludes that oral argument is
unnecessary to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER GRANTING MOTION TO LIFT STAY - 1

1   Defendant then sought a stay of further litigation pending Ecology's issuance of the
2   NPDES permit. Dkt. # 88 at 2. Defendant argued the stay would be short term and promote
3   judicial efficiency by allowing Ecology to first determine the severity of the facility's pollution.
4   *Id.* The Honorable Ronald B. Leighton, to whom the case was formerly assigned, stayed the case
5   on July 22, 2019 for "good cause shown." Dkt. # 94. The stay was indefinite in nature. *Id.*

6   In March 2020, plaintiff moved the Court to lift the stay and enter a preliminary
7   injunction. Dkt. # 95. Judge Leighton denied the motions, stating that the stay would remain in
8   place until Ecology completed its permitting process. Dkt. # 105 at 2. Upon Judge Leighton's
9   retirement from the federal bench in August 2020, the case was reassigned to Judge Robert S.
10  Lasnik. Dkt. # 106.

11  Plaintiff filed the instant motion on January 27, 2022, again seeking to lift the stay. Dkt.
12  # 107. Plaintiff argues that the circumstances under which the stay was originally granted have
13  changed due to undue delay in the permitting process. *Id.* Defendant initially represented the
14  final NPDES permit would issue approximately six months from June 25, 2018. Dkt. # 50 at
15  ¶ 12 (Declaration of Steven Hammer). Plaintiff contends this delay has impacted its ability to
16  obtain discovery and reduced available evidence, including witness availability. Dkt. # 107 at 8.

17  In response, defendant argues that the delay does not impact the propriety of the stay and
18  is due to circumstances beyond its control, including the lack of a pre-existing permitting
19  template for a shellfish hatchery, COVID-19, and Ecology staffing shortages. Dkt. # 108 at 4.
20  Defendant also asserts it has fully cooperated with Ecology throughout the permitting process.
21  *Id.* at 3. Defendant states that Ecology expects to issue a final NPDES permit by the end of the
22  year. Dkt. # 108-1 at ¶ 5 (Declaration of Laurie Niewolny).

23  **II. DISCUSSION**

24  **A. Threshold Issues**

25  Defendant argues that two threshold issues prevent the Court from reevaluating the stay.
26  The Court finds that neither issue poses a procedural bar to its evaluation of the stay.

27  **(1) Motion for Reconsideration**

28  Defendant argues the Court should construe plaintiff's motion to lift the stay as an

1    impermissible motion for reconsideration. Dkt. # 108 at 6. The Court disagrees. A motion for

2    reconsideration is subject to stringent procedural requirements, including that it must be filed

3    within fourteen days of the order. *See* W.D. Wash. LCR 7(h)(2). In contrast, when evaluating a

4    request to lift a stay, the Court may consider the length of the stay. *See infra* Part B (discussing

5    requirements to lift stay). Casting plaintiff's motion as a motion for reconsideration would

6    effectively bar every motion to lift a stay that has been in place for more than fourteen days as

7    an impermissible motion for reconsideration.

8              **(2) Law of the Case Doctrine**

9              Defendant also argues that because Judge Leighton declined to lift the stay, the law of the

10   case doctrine proscribes the Court from reviewing the stay. Dkt. # 108 at 11. Under the law of

11   the case doctrine, a lower court is generally precluded from reconsidering a rule of law that has

12   been actually considered and finally decided by a reviewing court. *Askins v. United States*, 899

13   F.3d 1035, 1042 (9th Cir. 2018). However, this doctrine does not preclude the Court from

14   reassessing its own legal findings in the same case. *Id.* Accordingly, the Court is not bound by

15   Judge Leighton's ruling.

16   **B.  Stay Standard**

17             In evaluating the propriety of lifting a stay, the Court considers whether, under the

18   standard the Court originally applied when granting the stay, changed circumstances support

19   lifting the stay. *Alaska Survival v. Surface Transp. Bd.*, 704 F.3d 615, 616 (9th Cir. 2012)

20   (finding petitioner no longer satisfied the standard for issuance of the stay). The Court accounts

21   for any new developments, including the passage of time, in determining whether a stay remains

22   warranted.[2] *See Hurrle v. Real Time Resols., Inc.*, No. C13-5765-BHS, 2015 WL 9850707, at *2

23   (W.D. Wash. 2015); *CMB Indus. v. Zurn Indus.*, No. C00-0364L, 2003 WL 25956135, at *1

24   (W.D. Wash. 2003).

25

26             [2] Defendant maintains that plaintiff's discussion of the passage of time confuses the standard for
27   lifting a stay with the collateral order doctrine exception to the final judgment rule. Dkt. # 108 at 7. This
     characterization is misleading. Both the collateral order doctrine and the standard for lifting a stay
28   account for the length of a stay as a factor that guides their respective analyses. *Dependable Highway
     Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1065-1067 (9th Cir. 2007).

ORDER GRANTING MOTION TO LIFT STAY - 3

Judge Leighton's order granting the stay did not clearly state the grounds for the stay. Dkt. # 94. District courts, vested with the discretion to grant a stay, must provide a reasoned explanation for why they are granting a stay. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). There are two standards under which the stay may have been originally granted: (1) the primary jurisdiction doctrine and (2) the inherent powers doctrine. In the absence of a clear indication of why the stay was originally granted, the Court considers the propriety of lifting the stay under both the primary jurisdiction and inherent powers doctrines.

**(1) Primary Jurisdiction Doctrine**

Judge Leighton may have stayed the case under the primary jurisdiction doctrine.[3] Under this prudential doctrine, a court may stay a case pending agency resolution of an issue. *Cohen v. Conagra Brands, Inc.*, 16 F.4th 1283, 1291 (9th Cir. 2021). A stay is appropriate in the narrow set of circumstances where "a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Astiana v. Hain Celestial Group*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Primary jurisdiction is not "a doctrine that 'requires that all claims within an agency's purview to be decided by the agency. Nor is it intended to "secure expert advice" for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit.'" *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (quoting *Brown v. MCI WorldCom Network Servs. Inc*, 277 F.3d 1166, 1172 (9th Cir. 2002)).

The Court evaluates primary jurisdiction under four principal factors: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

---

[3] Factors that point towards this doctrine include, for instance, Judge Leighton's explanation regarding the necessity of obtaining Ecology's expertise in an earlier order denying plaintiff's motion to compel discovery. Dkt. # 85 at 2. Additionally, defendant raised the primary jurisdiction doctrine in an earlier motion in opposition to plaintiff's motion to reopen the case. Dkt. # 49 at 5-6.

1  *Id.* at 781. The Ninth Circuit also has emphasized avoiding needless delay. *Rhoades v. Avon*
2  *Products, Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) ("The deciding factor should be
3  efficiency.").

4       Moreover, although Ninth Circuit has not addressed the issue, other Circuits have
5  expressed hesitation about staying a case on primary jurisdiction grounds when Congress has
6  authorized citizen suits. *See, e.g., Conservation L. Found., Inc. v. Exxon Mobil Corp.*, 3 F.4th
7  61, 71 (1st Cir. 2021) (describing citizen suits as in tension with the primary jurisdiction
8  doctrine, but declining to determine whether a stay is always inappropriate when a suit is
9  brought under a citizen suit provision); *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d
10  1267, 1277 (10th Cir. 2018) (holding that CWA's authorization of citizen suits supported district
11  court's refusal to stay the action under the primary jurisdiction doctrine); *Baykeeper v. NL*
12  *Indus., Inc.*, 660 F.3d 686, 691 (3d. Cir. 2011) (same).

13       It is uncontested that Ecology has regulatory authority, delegated by the Environmental
14  Protection Agency, to issue NPDES permits under the CWA. Dkt. # 108 at 3. However, plaintiff
15  is not asking the Court to rule on the proper contents of the NPDES permit. It is asking the
16  Court to assess statutory penalties and issue injunctive relief for an ongoing CWA violation –
17  namely, the release of discharges into Quilcene Bay without an NPDES permit. Dkt. # 107 at 8.

18       The CWA vests the Court with discretion to set reasonable injunctive relief. *Nat. Res.*
19  *Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1000 (9th Cir. 2000). Although Ecology has
20  been actively involved with mitigation efforts, it is not clear that awaiting further the permitting
21  proceedings will efficiently resolve plaintiff's requested injunctive relief. *Astiana*, 783 F.3d at
22  761 (primary jurisdiction is not required when referral to the agency would delay a ruling the
23  Court is competent to make); Dkt. # 108 at 3. Moreover, where an action is brought under a
24  citizen suit provision, as here, deference to congressional judgment supports lifting the stay.

25       The CWA also requires mandatory civil penalties for violations and includes various
26  factors the Court must consider in setting the penalty. These factors are: "the seriousness of the
27  violation or violations, the economic benefit (if any) resulting from the violation, any history of
28  such violations, any good-faith efforts to comply with the applicable requirements, the economic

impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C.

§ 1319(d). The factors do not expressly contemplate NPDES permit conditions. *Id.* While a

permit cap on effluent discharge might provide information about the severity of defendant's

violations, awaiting the permit strays too far towards utilizing the stay to impermissibly secure

expert advice from Ecology. Further, whatever derivative benefit the Court may gain from the

permit is now outweighed by the substantial delay in the permitting process. That delay has

caused real harm to plaintiff's ability to present evidence and witness testimony. Dkt. # 107 at 8.

The Court therefore concludes that the primary jurisdiction doctrine no longer supports a stay in

this case.

### (2) Inherent Powers Doctrine

Alternatively, Judge Leighton may have stayed the case under the inherent powers

doctrine.[4] As part of its inherent power to "control the disposition of the causes on its docket

with economy of time and effort for itself, for counsel, and for litigants," the Court has the

power to stay litigation pending resolution of a related proceeding. *Landis v. N. Am. Co.*, 299

U.S. 248, 254 (1936); *Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 863-64 (9th Cir.

1979) ("This rule applies whether the separate proceedings are judicial, administrative, or

arbitral in character, and does not require that the issues in such proceedings are necessarily

controlling of the action before the court."). "The proponent of a stay bears the burden of

establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). In deciding whether to grant a

stay, the Court weighs the following competing interests: (1) "the possible damage which may

result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in

being required to go forward;" and (3) the stay's potential to simplify or complicate "issues,

proof, and questions of law." *CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). In considering

the first element, the Ninth Circuit has indicated that where a party seeks injunctive relief

against ongoing and future harm, there must be a fair possibility of harm to that litigant. *Lockyer*

---

[4] Judge Leighton may have believed Ecology's input would increase judicial efficiency in setting a penalty. *See* Dkt. # 85 at 2 (denying plaintiff's motion to compel discovery and stating that he could not determine the severity of the CWA violation without the permit). Moreover, defendant cited the inherent powers doctrine in its motion urging the Court to stay the case. Dkt. # 92 at 3.

*v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). In considering the second element, the Ninth Circuit has stated that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Id.* at 1112 (quoting *Landis*, 299 U.S. at 255).

The authority to lift a stay attends the power to grant a stay. The Supreme Court has indicated that a district court may abuse its discretion when it imposes "a stay of infinite duration in the absence of a pressing need." *Landis*, 299 U.S. at 255. Additionally, a stay should be lifted if it would result in undue delay. *Dependable Highway v. Navigators*, 498 F.3d 1059, 1066 (9th Cir. 2007).

The significant delay in this case has changed the balance of harms. There is more than a "fair possibility" that the lag in the permitting process has harmed plaintiff. Plaintiff alleges the loss of discovery, evidence, and key witness testimony have hurt its ability to effectively pursue its claims. Dkt. # 107 at 8. Plaintiff also has been deprived of the opportunity to pursue an injunction against ongoing and future harms. The fact that the permit may provide a useful data point about the severity of defendant's CWA violations does not make a clear case of hardship or inequity sufficient to overcome plaintiff's showing of harm. Moreover, the delay here has been significant. Plaintiff first filed this over suit six years ago. Dkt. # 1. Defendant has been on notice that its continued discharges require an NPDES permit since at least the Ninth Circuit's mandate of March 9, 2018. Dkt. # 44.

The Court is sensitive to the fact that some of the delay in the permitting process is due to circumstances beyond defendant's or Ecology's control. Dkt. # 108 at 4. Additionally, the Court is cognizant of defendant's cooperation with agency staff. Dkt. # 108 at 3. These may be mitigating factors to consider in setting a penalty amount or fashioning injunctive relief. 33 U.S.C. § 1319(d). Nonetheless, the balance of harms and undue delay weighs against maintaining the stay under the inherent powers doctrine.

### III. CONCLUSION

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

    1.  Plaintiff's motion to lift the stay, Dkt. # 107, is GRANTED; and

1

2.  The parties shall confer and, within fourteen days of this Order, jointly submit

2          their proposed schedule for further proceedings.

3      DATED this 3rd day of June, 2022.

4

5

6          Robert S. Lasnik
           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION TO LIFT STAY - 8